IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 0:04-898-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LATONYA RENEE DAVIS | ) | |
| _____ | ) | |

    This matter is before the court on the defendant's *pro se* motion (ECF No. 601) for compassionate release pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). The defendant seeks a reduction in her sentence due to various claims including her medical conditions, changes in the law, sentencing disparities, her age, rehabilitation, PATTERN scoring, programming, and the amount of time she has already served.

    The government has responded in opposition (ECF Nos. 610, 615), asserting that the defendant has not shown extraordinary and compelling reasons for release, and that the § 3553(a) factors strongly counsel against granting the defendant a further reduction to time served. The defendant replied to the government's response and this matter is now ripe for review.

## STANDARD OF REVIEW

    Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district

1

court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement— United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281–82, 284. A court, therefore, remained "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended U.S.S.G. §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction. The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all

4

administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government concedes that the defendant has exhausted her administrative remedies, thus the court will proceed to review the matters on the merits.

*Request for Appointment of Counsel*

As an initial matter, the defendant's request for appointment of counsel is denied because there is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); *cf.* 18 U.S.C. § 3006A (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). Here, the defendant has previously filed several post judgment motions for relief without the assistance of counsel, and she has not otherwise established that the interests of justice require appointment of counsel in these circumstances.

FACTUAL AND PROCEDURAL HISTORY

The history of the defendant's criminal case and proceedings which were set out in this court's order of June 4, 2021 (ECF No. 589)[1] are recited below.

The defendant and other co-conspirators were initially charged with participating in a drug conspiracy involving 50 grams or more of cocaine base, 5 kilograms or more of cocaine, and a quantity of marijuana. The defendant was arrested in Charlotte, North Carolina on April 22, 2005. The government filed an Information notifying the defendant that she faced an enhanced penalty under 21 U.S.C. § 851 based upon a prior felony drug conviction. A grand jury returned a Third Superseding Indictment (ECF No. 101) charging the defendant and several co-conspirators with various drug and firearm offenses surrounding a drug-related murder. Specifically, the defendant was charged with the following:

Count 1: Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base (commonly known as "crack"cocaine), 5 kilograms or more of cocaine, and a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(D),and 846;

Count 6: While engaging in a drug conspiracy involving 5 kilograms or more of cocaine and 50 grams or more of cocaine base, intentionally killed, counseled, commanded, induced, procured and caused the intentional killing of Robin Platts, and aided and abetted each other and others in the commission of the aforesaid offense, in violation of 21 U.S.C. §§ 848(e)(1)(A) and 18 U.S.C. § 2; and

---

[1] In that order, this court reduced the defendant's sentence, over the government's objections, from life to 30 years pursuant to § 404(b) of the First Step Act.

> Count 7: During and in the course of a violation of 18 U.S.C. § 924(c), to wit: the knowing use and carrying of firearms, during and in relation to a drug trafficking crime and a crime of violence, each of which is prosecutable in a court of the United States, and in further of any such crime; did cause the death of a person through the use of firearms, such killing being a murder as defined in 18 U.S.C. § 1111, in that the defendants with malice aforethought did unlawfully kill Robin Platts by willfully, deliberately and maliciously shooting her with firearms, with premeditation and in the perpetration of the offenses alleged in Count 1 of this Third Superseding Indictment, and did aid and abet each other and others in the commission of the aforesaid offense, in violation of 18 U.S.C. §§ 924(j)(1) and § 2.4.

The defendant's co-conspirators all plead guilty and cooperated. Several co-conspirators testified against the defendant during her jury trial. On October 31, 2006, the defendant was convicted by a jury on all three Counts.

The Presentence Report (PSR) (ECF No. 304) prepared by the U.S. Probation Office determined the defendant's offense level to be 43 on each count. A murder cross reference under U.S.S.G. § 2A1.1 (first degree murder) was applied to Counts 1, 6, and 7. The defendant's criminal history category was I. The defendant had prior separate state convictions for carrying a concealed weapon and possession with intent to sell and deliver cocaine. Based on an offense level of 43 and criminal history category of I, the defendant's Guideline range was life imprisonment. On February 27, 2007, this court sentenced the defendant to life imprisonment on Counts 1, 6, and 7, to be served concurrently, followed by 10 years of supervised release.

The defendant filed a notice of appeal. The Fourth Circuit Court of Appeals upheld the defendant's conviction and life sentence in an opinion issued on March 12, 2008. *See United States v. Davis*, 269 Fed. Appx. 318 (4th Cir. 2008).

The defendant filed various motions challenging her convictions in the years since her trial and sentencing. She first filed a motion pursuant to 28 U.S.C. § 2255 in July 2014, which this court denied. The defendant next filed a motion to reduce her sentence pursuant to Amendment 782 of the United States Sentencing Guidelines which this court also denied. The defendant then filed a second § 2255 motion in June 2016 which this court denied.

Because the facts of the defendant's crimes are important, the court will recite below the factual development as set out in the opinion of the Fourth Circuit Court of Appeals in the defendant's direct appeal of this case.

> "On May 14, 2004, Davis traveled from Charlotte, North Carolina to Columbia, South Carolina to meet Anthony White. White wished to exchange cocaine he had purchased earlier through Davis because the cocaine was not properly cooking into crack and to purchase additional cocaine. Three of Davis' cohorts—Roy Sargeant, Curtis Ashford, and Horace Vaughn, Jr.—traveled to Columbia as well, in a separate vehicle. Davis and the three men intended to rob White of his drugs and money. After meeting White in Columbia, Davis led White's car north on I-26. At a predetermined exit, Davis exited I-26 and honked her horn to signal Sargeant and Ashford, who were lying in wait for White in a ditch beside the road." *Id*. at 319.

> "As the two vehicles approached the end of the exit ramp, Sargeant and Ashford approached White's vehicle, in an attempt to rob White. However, Davis did not come to a complete stop at the end of the ramp and thereby failed to block White's vehicle. Sargeant and Ashford then fired multiple shots into White's car. Robin Platts, White's girlfriend, was driving White's car and was killed by a shot fired by Sargeant. From the passenger seat, White managed to maneuver the vehicle back onto I-26, where he succeeded in flagging down help. Davis and her fellow assailants fled the scene." *Id*.

> "Officers responding to the scene discovered a backpack containing cocaine residue and $44,875 in cash. During a search of the woods, officers discovered approximately one kilogram of cocaine, which White admitted to hiding. As a result of the shooting, the Federal Bureau of Investigation (FBI) began investigating Davis, Sargeant, White, Ashford, Vaughn and others. Through cell phone records, the FBI connected White to Davis and then Davis to Sargeant. Agents stopped Sargeant on September 28, 2004, and discovered 250.57 grams of marijuana and 12.18 grams of crack cocaine in Sargeant's vehicle. A subsequent search of Sargeant's apartment resulted in officers seizing drugs and multiple firearms. Sargeant, a convicted felon, was arrested on federal gun and drug charges." *Id*.
>
> "Davis was ultimately arrested and admitted to involvement in a drug conspiracy with Sargeant and others, involving kilogram quantities of cocaine. On August 17, 2005, Davis was indicted in a Third Superseding Indictment for: (1) conspiracy to possess with intent to distribute 50 grams or more of cocaine base, 5 kilograms or more of cocaine, and a quantity of marijuana, in violation of 21 U.S.C. § 841 (Count One); (2) the intentional killing of Robin Platts while engaged in the offense described in Count One, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and (3) the unlawful killing of Robin Platts while in possession of a firearm during and relation to a drug trafficking crime and a crime of violence, in violation of 18 U.S.C. § 924(j)(1). Prior to this Third Superseding Indictment, Sargeant began cooperating with the Government. Sargeant admitted to his involvement in the drug conspiracy and the killing of Robin Platts and entered into a plea agreement. Ashford, likewise, eventually entered into a similar plea agreement." *Id*. at 319–20.

*United States v. Davis*, 269 Fed.Appx. 318 (4th Cir. 2008).

In its order of June 4, 2021 (ECF No. 589), this court carefully considered and recalculated the advisory sentencing Guidelines, the relevant statutory sentencing factors under 18 U.S.C. § 3553(a), the provisions of the First Step Act, the full record in this matter, as well as the arguments of the parties. The court concluded, consistent with directives from the Fourth Circuit Court of Appeals, that some modification of the defendant's sentence was in order. Specifically, this court reduced the defendant's three concurrent life sentences to

9

30 years for each count to run concurrent. Although the government conceded that the defendant was eligible for relief under § 404(b) of the First Step Act, the government strongly argued against a reduction due to the severity of the offense and the § 3553(a) factors.

As to the defendant's present motion for compassionate release, the government maintains that the § 3553(a) factors still weigh heavily against release.

In its June 4, 2021 order granting a reduction under § 404(b), this court explained its reasoning with regard to the § 3553(a) factors. The court has again reviewed the factors and finds that the factors have not changed substantively since this court's earlier order, despite the defendant's arguments raised in her present motion.

*Factors under § 3553(a)*

The court must consider the statutory factors under 18 U.S.C. § 3553(a) and any post-sentencing conduct to impose a sentence which is sufficient, but not greater than necessary by considering, in part:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; . . . the kinds of sentences available . . . and the sentencing range establish[ed] for the . . . offense committed . . . as set forth in the [G]uidelines[.]

18 U.S.C. § 3553(a).

(1) *Nature and Circumstances of the Offense*. As noted previously, the defendant was convicted by a jury on all three counts alleged in the Superseding Indictment: Count 1 —conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base (commonly known as "crack" cocaine), 5 kilograms or more of cocaine, and a quantity of marijuana; Count 6 — while engaging in a drug conspiracy involving 5 kilograms or more of cocaine and 50 grams or more of cocaine base, intentionally killed, counseled, commanded, induced, procured and caused the intentional killing of Robin Platts, and aided and abetted each other and others in the commission of the aforesaid offense; and Count 7 — during and in the course of a violation of 18 U.S.C. § 924(c), to wit: the knowing use and carrying of firearms, during and in relation to a drug trafficking crime and a crime of violence, each of which is prosecutable in a court of the United States, and in further of any such crime; did cause the death of a person through the use of firearms, such killing being a murder as defined in 18 U.S.C. § 1111, in that the defendants with malice aforethought did unlawfully kill Robin Platts by willfully, deliberately and maliciously shooting her with firearms, with premeditation and in the perpetration of the offenses alleged in Count 1 of this Third Superseding Indictment, and did aid and abet each other and others in the commission of the aforesaid offense. These are all serious offenses that place this case in a category far beyond the traditional drug trafficking conspiracy cases that routinely are processed through this court.

(2) *History and Characteristics of the Defendant*. The defendant is now 54 years old and has completed approximately 19 years of incarceration at the BOP. Her scheduled date

of release from the BOP is May 6, 2032. As noted, her disciplinary record is good and she has attended a number of educational and vocational classes while incarcerated. She attests that she has strong community and family support. Captain T. Gentry of the Federal Correctional Institution in Aliceville, Alabama, has submitted a letter on the defendant's behalf, noting that the defendant has been an invaluable worker within the recreation department and the entire institution. His letter highly commends the defendant for her professionalism and respect among her peers and staff.

  (3) *Seriousness of the Crimes*. As noted, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

  (4) *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment, but that does not necessarily require a sentence of life imprisonment.

  (5) *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

  (6) *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

  (7) *Need to Avoid Unwarranted Sentencing Disparities*. As noted previously, all of the co-defendants pleaded guilty and cooperated. As a result, they received corresponding motions for leniency in sentencing. The defendant elected to plead not guilty and go to

trial— as his her right—but for that reason alone, the sentence received by the co-defendants cannot be said to be sufficient comparators to warrant a substantial reduction in sentence.

## DISCUSSION

### *I. The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant contends that she suffers from uncontrolled hypertension and hyperthyroidism. She also submits that she is at an increased risk to have several severe and

potentially fatal complications if she is infected with COVID-19 due to her age and health. The defendant is now 54 years old and has been fully vaccinated against COVID-19. Although she acknowledges the termination of the national COVID-19 emergency,[2] she contends there has been a resurgence of COVID cases in the United States such that she could contract a new strain.

In its response in opposition, the government asserts that none of the defendant's medical conditions qualifies as a serious physical or medical condition that would substantially diminish her ability to provide self-care within the correctional institution and from which she is not expected to recover. The government also submits that the defendant's medical conditions are well-controlled and she receives treatment in response to her complaints and ailments.

The court has reviewed the defendant's medical records (which exceed 700 pages[3]) provided under seal by the government. In 2021, the defendant had abdominal surgery which she appears to have fully recovered from. She takes daily medications for her hypothyroidism and hypertension.

The court cannot find or reasonably conclude that the defendant's medical conditions render her particularly susceptible to severe illness or death should she contract COVID or

---

[2] On May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the date of this order, there is no new declared emergency involving the BOP or the public in general.

[3] A large portion of the medical records related to the defendant's abdominal surgery in 2021, as well as screening tests performed during her incarceration.

one of its strains. Thus, the defendant has not satisfied the requirement of extraordinary and compelling reasons regarding her medical issues, nor do they meet the requirements of U.S.S.G. § 1B1.13(d).

## II. Changes in the Law

The defendant relies on the 2023 U.S. Sentencing Guideline Amendment § 1B1.13(6) in her claim that she has received an unusually long sentence. She has served 19 years of her 30-year sentence which meets the 10-year threshold required for consideration under this policy.

The government argues that there is no intervening change in the law or the guidelines that would affect the ultimate guideline applicable to the defendant. Her sentence was based upon the drug conspiracy involving a drug related murder which resulted in a base offense level of 43. That has not changed, nor has her criminal history category of I.

The court finds no extraordinary or compelling reason to support the defendant's release on this basis. Indeed, the defendant has already had her life sentence reduced to 30 years.

## III. Sentence Disparities

The defendant contends that sentencing disparities exist between herself and her co-defendants. She points to the fact that her co-defendant Roy Sargeant, one of the murderers in this case, received a 275-month sentence; Michael Crank received a sentence of 144 months; the second murderer Curtis Ashford received a sentence of 220 months; and Horace Vaughn received a 144-month sentence.

As this court explained in its June 4, 2021 order, Ms. Davis' co-conspirators all pleaded guilty and cooperated and several testified against the defendant during her jury trial. As a result, they received corresponding motions for leniency in sentencing. The sentences received by the co-defendants cannot be said to be sufficient comparators to claim, let alone warrant, a further reduction in her sentence.

The defendant also argues that her drug sentence exceeds sentences being imposed nationally for drug trafficking. She claims that her sentence was significantly more punitive than the mean federal sentence for murder, citing statistics from the U.S. Sentencing Commissions 2022 Sourcebook of Federal Sentencing Statistics along with numerous cites to district court decisions across the country.

The Fourth Circuit Court of Appeals has previously determined that this court's original sentence of life imprisonment was reasonable. *See United States v. Davis*, 269 Fed. Appx. 318 (4th Cir. 2008). Under § 404(b) of the First Step Act, a court is not required to reduce a defendant's sentence—any relief awarded is discretionary with the sentencing court. Despite the fact that this court was not obliged to grant relief, it carefully considered all of the statutory factors under § 3553(a), including the defendant's post-sentencing conduct and efforts at rehabilitation. And, despite the fact that the defendant was determined by a jury to be guilty of very serious offenses, including the murder of an innocent individual, this court reduced the defendant's three life sentences down to 30 years each, to run concurrently. The defendant's continued claims of gross disparity are without merit and do not present an extraordinary and compelling reason for consideration of relief.

### *IV. Age, Rehabilitation, Pattern Scoring, and Programming*

The defendant is now 54 years of age. She asserts that she has engaged in every rehabilitation program made available to her. She attests that her PATTERN Score is minimum and her BOP calculated recidivism rate is low.

The government argues that while the defendant has completed an impressive number of courses within the BOP, some of those courses were of minimal rehabilitative value. The government provided a copy of the defendant's disciplinary record which shows only two incidents during her incarceration: (1) sending an unauthorized email (2020); and disruptive conduct (2018). The government notes that rehabilitation, standing alone, does not provide a sufficient ground warranting a sentence reduction. *See* 28 U.S.C. § 994(t).

As it did in its first order reducing the defendant's sentence from life to 30 years, this court has taken into consideration all of the defendant's efforts at rehabilitation and post-sentencing conduct. Nothing has changed dramatically from the defendant's first motion, thus this court finds nothing extraordinary and compelling regarding the defendant's age, rehabilitation efforts, or programming.

### *V. Harsh Prison Conditions*

The defendant argues that she has experienced unusually harsh conditions as a consequence of the BOP's lock down measures undertaken to control the spread of COVID-19 which disrupts rehabilitation and work programs. She also complains that many illegal aliens have been moved into the federal prison system which contributes to a very unstable and unsafe prison environment.

The defendant has asserted general allegations and does not provide specific proof that these conditions have affected her health or well-being. The defendant is, of course, entitled to litigate these conditions of confinement complaints through a different avenue such as a § 1983 action in the District of her confinement. Accordingly, this claim is dismissed as it is not appropriate under a motion for compassionate release under § 3582(c)(1)(A).

## CONCLUSION

The court has carefully considered the totality of the record before it and conducted an individualized analysis of the facts and issues raised by the parties.

In summary, the court does not find an extraordinary and compelling reason for consideration of compassionate release on any of the defendant's claims. For the reasons stated herein, the defendant's motion (ECF No. 601) is respectfully denied.

IT IS SO ORDERED.

March 20, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge